## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LUCENDIA ISLER,

     *Plaintiff*,

     v.

GENERAL ELECTRIC EMPLOYEES
FEDERAL CREDIT UNION,

     *Defendant*.

No. 3:18-cv-00867 (MPS)

### RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.     INTRODUCTION

Plaintiff Lucendia Isler alleges that Defendant General Electric Employees Federal Credit Union ("GE Credit Union") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq* by failing to conduct an adequate investigation into her dispute about the accuracy of information about her credit it had reported to consumer reporting agencies ("CRAs"). Plaintiff has filed a motion for partial summary judgment as to negligence liability under 15 U.S.C. §§ 1681s-2(b)(1) and 1681o. For the reasons set forth below, Plaintiff's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.

## II.     BACKGROUND

The following facts are taken from the parties' Local Rule 56(a) Statements and are undisputed unless otherwise indicated.

Plaintiff lives in Wallingford, Connecticut. ECF No. 56-1 at ¶ 1. On July 11, 2010, she filed for Chapter 13 bankruptcy, listing the Bridgeport Fire Department Federal Credit Union ("Bridgeport Credit Union"), the predecessor to GE Credit Union, as a creditor. *Id.* at ¶¶ 6, 9. In August 2010, the Bridgeport Credit Union filed two claims in Plaintiff's Chapter 13 bankruptcy – one for $12,850.17 and the other for $15,556.48. *Id.* at ¶ 10. Plaintiff's Chapter 13 bankruptcy

trustee submitted monthly payments on the claims, the last payment being submitted on August 27, 2009. *Id.* at ¶ 7, 11; ECF 52-3 at 7.  Records of the trustee's payments were maintained by Bridgeport Credit Union (later GE Credit Union) in a spreadsheet. ECF No. 56-1 at ¶ 32; ECF No. 52-3 at 16-17. In 2011, Bridgeport Credit Union merged into GE Credit Union. ECF No. 56-1 at ¶ 6.

In 2013, GE Credit Union furnished information to Experian Information Solutions ("Experian") indicating that Plaintiff owed an account amounting to $15,556 that was past due as of October 2013 and charged off.[1] ECF No. 56-1 at ¶ 13 (The parties agree that GE Credit Union is a "furnisher" of information and Experian is a "consumer reporting agency," i.e., a CRA, for purposes of the FCRA. ECF No. 56-1 at ¶¶ 2-3). On July 22, 2016, Plaintiff completed the Chapter 13 bankruptcy and was awarded a discharge, which included a discharge of her debts to GE Credit Union. ECF No. 56-1 at ¶ 12; ECF No. 1 at 5-7.  Plaintiff attached a letter and Order of Discharge to her complaint. The order of discharge explains that "Creditors cannot collect discharged debts." The letter dated May 9, 2018, states that Plaintiff's account was included in Chapter 13 and all payments had been made according to the plan.

The parties dispute whether Plaintiff paid the entire balance on the account. Elsie Vrabel, GE Credit Union's corporate designee, testified that three of Plaintiff's checks were never

---

[1] To charge off is "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." *Artemov v. TransUnion, LLC*, 20-CV-1892, 2020 WL 5211068, at *3 (E.D.N.Y. Sept. 1, 2020) *quoting* Black's Law Dictionary (11th ed. 2019). Charging off "does not diminish the legal right of the creditor to collect the full amount of the debt." *Id.* at *4, *quoting Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016) (quotation marks omitted). "[A] charge off is one of the most adverse factors that can be listed on a credit report." *Id.* (citations and internal quotation marks omitted).

received, that a balance of approximately $1,500 remained on Plaintiff's account, and that GE Credit Union eventually charged off this remaining balance. ECF No. 57 at 15-17.[2]

On December 12, 2017, Plaintiff disputed GE Credit Union's report with Experian.  ECF No. 56-1 at ¶¶ 16-17. The "dispute reason" listed on the Experian form was "Account included in bankruptcy … T[HI]S ACCOUNT WAS PAID IN FULL [CH] 13 BANKRUPTCY." ECF 52-3 at 21. The same Experian form indicates that two days later, GE Credit Union's "authorized verifier" (which the parties refer to as its "dispute operator"), Theresa DaCruz, responded as follows: "Account information accurate as of date reported." *Id.* The form also indicates that Plaintiff owed an account amounting to $15,556 that was past due as of October 2013 and charged off. *Id.*; ECF No. 56-1 at ¶¶ 17, 18. When Ms. DaCruz confirmed that the report was accurate, she did not access an account summary listing "Name Prime: LUCENDIA D ISLER" that included the reference "Chapt. 13 Trustee P[AY]M[EN]TS-2 LOANS." ECF No. 56-1 at ¶ 19; ECF No. 52-4 at 18-19 (discussing ECF No. 52-3 at 13).[3]

On April 29, 2018, Plaintiff again disputed GE Credit Union's report with Experian. ECF No. 56-1 at ¶ 20.  Experian's form indicates, next to the notations "Con[su]mer … Comments" and "FCRA Relevant Information": "Consumer states inaccurate inform[ation]…. ACCOUNT WAS INCLUDED IN THE BK [CH] 13 IN 7/11/2010."; ECF No. 52-3 at 3. The form further indicates that GE Credit Union responded on May 9 with the same refrain:

---

[2] Plaintiff argues that GE Credit Union's spreadsheet shows that no balance remained. *See* ECF No. 52-3 at 16-17. Plaintiff also argues that, as a matter of law, Plaintiff did not owe any balance on the account due to the bankruptcy discharge. ECF No. 61 at 3. For the purposes of this motion, however, Plaintiff accepts GE Credit Union's position that $1,500 remained due. *Id.*

[3] The account summary containing the reference to "CHAPT. 13 TRUSTEE PMTS – 2 LOANS" is dated August 7, 2018 – about eight months after DaCruz's December 14, 2017 response to Experian.

"Account information accurate as of date reported." *Id.* And again, the form showed that Plaintiff owed an account amounting to $15,556 that was past due as of October 2013 and charged off. ECF No. 56-1 at ¶ 21; ECF No. 52-3 at 3. On that same day, however, Ms. DaCruz changed GE Credit Union's internal code on Plaintiff's account from code 97 ("unpaid balance reported as a loss/chargeoff") to code H ("completed through Bankruptcy Chapter 13"). ECF No. 56-1 at ¶ 22; ECF No. 52-4 at 15-17; *see also* ECF No. 52-3 at 5-6. According to Ms. Vrabel, the disputes GE Credit Union received through Experian "never alleged there was a discharge [in bankruptcy], up until May 9th, 2018," and GE Credit Union received confirmation "of her discharge of her bankruptcy" on that date, which is why Ms. DaCruz changed the code internally. ECF No. 57 at 27. Ms. Vrabel testified that "it takes a month to two months to upload this information" – referring to the coding change – to the credit bureaus. *Id.* at 21. She further testified that GE Credit Union did not report Plaintiff's account to the CRAs after October 2013.[4] *Id.* at 7.

On May 16, 2018, Plaintiff once again disputed GE Credit Union's report with Experian. ECF No. 56-1 at ¶ 24. The Experian form states: "Consumer stat[es] inaccurate information. Provide or confirm complete ID and verify [a]ll account information." ECF No. 52-3 at 7. The form indicates that GE Credit Union responded on May 17, again stating "Account information accurate as o[f da]te reporte[d]." *Id.* Again, Experian's form showed that Plaintiff owed an account amounting to $15,556 that was past due as of October 2013 and charged off. ECF No.

---

[4] From the context and given the other evidence in the record, it appears Ms. Vrabel's reference to not reporting Plaintiff's account to CRAs after October 2013 was meant to include only voluntary reports to the CRAs, as opposed to responses to dispute inquiries from the CRAs. It is undisputed that  GE Credit Union responded to dispute inquiries from Experian concerning Plaintiff's account in 2017 and 2018.  *See, e.g., Escobar v. Midland Credit Management*, 2019 WL 3751486 *6 (D. Conn. Aug. 8, 2019)(discussing distinction between a creditor's voluntary and required communications with consumer reporting agencies).

56-1 at ¶ 25; ECF No. 52-3 at 7. And for the fourth time, on May 17, Plaintiff disputed this report with Experian: "Consumer states inaccurate …. Provide [or] confirm complete [ID] and verify [all] account information." ECF No. 56-1 at ¶ 26; ECF No. 52-3 at 9. And again, GE Credit Union responded in the same manner, this time on the same day: "Account information accurate as o[f da]te reporte[d]." ECF No. 52-3 at 9. And again the form showed that Plaintiff owed an account amounting to $15,556 that was past due as of October 2013 and charged off. ECF No. 56-1 at ¶ 27; ECF No. 52-3 at 7. GE Credit Union never updated its report to Experian to show the code H ("completed through Bankruptcy Chapter 13"). ECF No. 56-1 at ¶ 28; ECF No. 52-4 at 51.

It is not clear from the record whether the Experian forms themselves – or even which specific items of information set forth in those forms – were conveyed to GE Credit Union. The parties point to no evidence showing precisely what Experian communicated to GE Credit Union with regard to the four disputes, although it is apparent from the forms, all of which contain a response from GE Credit Union, that the credit union was made aware that the consumer was disputing the accuracy of its reporting in some way. See ECF No. 52-3 at 3, 7, 9, and 21.

GE Credit Union maintained records of members' accounts, including Plaintiff's account, in its Symitar system. ECF No. 56-1 at ¶ 30; ECF No. 52-4 at 40. The records showing Plaintiff's payments (and the Chapter 13 Bankruptcy trustee's payments on her behalf) on her account were not included in the Symitar system but were maintained in a separate spreadsheet in the finance department with which Ms. DaCruz was unfamiliar. ECF No. 56-1 at ¶¶ 32, 39; ECF No. 52-4 at 3-4, 50, 52-53.

When Plaintiff submitted her disputes, Ms. DaCruz was the sole employee who interfaced with Experian and other consumer reporting agencies on the E-Oscar platform used by

consumer reporting agencies to convey disputes to furnishers. ECF No. 56-1 at ¶ 37; ECF 52-4 at 46-48. To process disputes, Ms. DaCruz could access only data that she had access to on her work computer. ECF No. 56-1 at ¶ 40; ECF No. 52-4 at 16-17, 20-21. This included the "File Maintenance" screen, which showed account history and on which Ms. DaCruz had changed GE Credit Union's internal code on Plaintiff's account to code H -- "completed through Bankruptcy Chapter 13" – on May 9, 2018. ECF No. 56-1 at ¶¶ 22, 40; ECF No. 52-4 at 15-17; *see also* ECF No. 52-3 at 5. Ms. DaCruz testified that her practice when receiving a complaint of "inaccurate reporting" like Ms. Isler's would be to review the account, "look[ing] for what the credit bureau is supplying as the complaint against what we're reporting." ECF No. 52-4 at 10. Specifically, she would look at the "history" and "collection notes" in the Symitar system to determine what GE Credit Union was reporting. *Id.* at 11. With respect to Ms. Isler's account, she testified, she "confirm[ed] that the balance of 15,000 was correct" and "showing in [our] system," and "confirm[ed] that the amount past due was correct." *Id.* at 12.

## III.    LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted).  In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to

6

any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## IV.   DISCUSSION

Plaintiff asserts that the undisputed evidence in the record shows at least that GE Credit Union negligently violated Section 1681s-2(b), arguing that the credit union (1) should have responded to Experian's inquiries by informing it that the account was subject to a bona fide dispute, and (2) failed to conduct a reasonable investigation in response to those inquiries. GE Credit Union responds that Plaintiff's dispute was not "bona fide" because she owed a balance on the account, and that the question whether its investigation was "reasonable" is one for the factfinder. I begin with an overview of the relevant portions of the FCRA and then turn to these two arguments, addressing them in reverse order.

### A.   Statutory Framework

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Among other things, the FCRA imposes duties on those who furnish information to CRAs. The duties involved in this case relate to what furnishers must do when notified by a CRA that a consumer disputes the completeness or accuracy of any information provided by the furnisher to the CRA – information that typically appears on the consumer's credit report and may affect his or her credit score. *See* § 1681s–2(b).

Specifically, § 1681s–2(b) requires a furnisher of credit information,

[a]fter receiving notice [of a dispute from a CRA] with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, ... [to] (A) conduct an investigation with respect to the disputed information; (B) review all

relevant information provided by the consumer reporting agency [in the communication of the dispute]; (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis ….

The investigation conducted by the furnisher must be reasonable. *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("If a dispute is filed with the [CRA], both the [CRA] and the furnisher of that information have a duty to reasonably investigate and verify that the information is accurate."); *see also Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012) ("[A]nything less than a reasonable inquiry would frustrate Congress's goal to create a system that permits consumers to dispute credit inaccuracies."); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004) ("It would make little sense to conclude that, in creating a system intended to give consumers a means to dispute—and, ultimately, correct—inaccurate information on their credit reports, Congress used the term 'investigation' to include superficial, *un* reasonable [sic] inquiries by creditors.") (emphasis in original).

Section 1681s-2(b) creates a private cause of action against a furnisher that violates the duties it imposes. *See* §§ 1681s-2(c), 1681n & 1681o. Section 1681n imposes civil liability for willful noncompliance,[5] and § 1681o imposes civil liability for negligent noncompliance.[6] *See Longman*, 702 F.3d at 151. "[T]o bring a claim under § 1681s–2(b), a plaintiff must establish three elements: (1) that he or she notified the consumer reporting agency of the disputed

---

[5] Section 1681n provides in relevant part: "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer. . . ."

[6] Section 1681n provides in relevant part: "Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer. . . ."

information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information." *Pride Acquisitions, LLC v. Osagie*, No. 3:12-CV-639 JCH, 2014 WL 4843688, at *8 (D. Conn. Sept. 29, 2014) (citation and quotation marks omitted).

### B.   Whether GE Credit Union Conducted A Reasonable Investigation of Plaintiff's Four Disputes

The parties disagree as to whether GE Credit Union conducted a "reasonable investigation" into Plaintiff's disputes. The Second Circuit has not delineated standards for assessing the reasonableness of a furnisher's investigation under Section 1681s-2(b). Several courts have found that the inquiry is an objective one that depends on the quality and quantity of the information received from the CRA and in which the plaintiff bears the burden of proof.  *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010) ("We … hold that the reasonableness of the investigation is to be determined by an objective standard. The burden of showing the investigation was unreasonable is on the plaintiff." (internal citation omitted)); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009) ("[A] furnisher's obligation to conduct a reasonable investigation under § 1681s–2(b)(1)(A) arises when it receives a notice of dispute from a CRA. Such notice must include 'all relevant information regarding the dispute that the [CRA] has received from the consumer.' § 1681i(a)(2)(A). It is from this notice that the furnisher learns the nature of the consumer's challenge to the reported debt, and it is the receipt of this notice that gives rise to the furnisher's obligation to conduct a reasonable investigation. The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute."); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir.

2005) ("Credit Control's investigation in this case was reasonable given the scant information it received [from the CRA] regarding the nature of Westra's dispute."). In *Westra*, the Seventh Circuit also noted that "[w]hether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Id.* As Plaintiff points out, courts have also found summary judgment to be proper where the *un*reasonableness of the defendant's investigation was beyond question.  *See, e.g., Marchiso v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288 (11th Cir. 2019) (holding as a matter of law that defendant failed to conduct reasonable investigation where it failed to ensure that information about a settlement agreement with consumers under which it agreed to report a zero balance due was included in the databases its employees reviewed to report information to CRAs).

In this case, no reasonable juror could find that GE Credit Union's investigation of two of Plaintiff's four disputes was reasonable, namely, the two disputes Plaintiff initiated on May 16 and May 17, 2018. By that time, even GE Credit Union concedes that it was aware of Plaintiff's discharge in bankruptcy and that Plaintiff's account status had been changed in the credit union's own records to "completed through Bankruptcy Chapter 13." *See* ECF No. 56-1 at para. 22; ECF No. 52-4 at 15-17; ECF No. 52-3 at 5-6; and ECF No. 57 at 27. A discharge in bankruptcy "releases a debtor from personal liability with respect to any discharged debt by voiding any past or future judgments on the debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004); *see also Freedom v. Citifinancial, LLC*, 2016 WL 4060510 * 6 (N.D. Ill. July 25, 2016) (noting that "in the FTC's view, a furnisher is not prohibited from reporting a debt that was discharged in bankruptcy so long as the balance amount is corrected to zero.").  It was

therefore plainly inaccurate for GE Credit Union to report on May 17, 2018 (as to both disputes) that Plaintiff still owed $15,556 and that the amount was past due and charged off. And the investigation leading to that error was just as plainly unreasonable: the same person (Ms. DaCruz) who had only 8 days earlier changed the credit union's internal coding of Plaintiff's account to "completed through Bankruptcy Chapter 13" failed to check the account screen on which she had so recently made that change and, consequently, failed to report the correct information to Experian on two occasions on May 17, 2108.  This was at least negligence, and no reasonable juror could find otherwise. Nor does Ms. Vrabel's testimony that "it takes a month to two months to upload this information" to the CRAs help the credit union here. Delays caused by the internal processes of a furnisher or CRA do not excuse the furnisher's failure, when responding to a dispute inquiry by a CRA, to check and report information that it had learned and entered into its system – through the same employee who was doing the reporting – only  a week earlier. Unlike the payment information on the spreadsheet maintained by the finance department, Ms. DaCruz was familiar with, and had access to, the code that she herself had entered on May 9 showing that Plaintiff's debt had been discharged through a Chapter 13 bankruptcy. I thus find that, as a matter of law, GE Credit Union negligently violated its duty reasonably to investigate Plaintiff's disputes initiated on May 16 and 17, 2018.

I do not reach the same conclusion, however, with respect to Plaintiff's two earlier disputes – initiated on December 12, 2017 and April 29, 2018.  GE Credit Union has submitted evidence from which a reasonable juror could find that before May 9, 2018, it was unaware of Plaintiff's bankruptcy – or at least her discharge in bankruptcy – and knew nothing more about Plaintiff's disputes than that she was contesting the accuracy of the credit union's reporting in some way. Ms. Vrabel testified that "[t]he requests that [Plaintiff] sent through e-Oscar, through

11

Experian, never alleged there was a discharge, up until May the 9th, 2018. And when we received actual confirmation, on the information of her discharge of her bankruptcy, we immediately changed that." ECF No. 57 at 27. And although the Experian forms reflecting these two earlier disputes both refer to the Chapter 13 bankruptcy, there is no evidence that GE Credit Union received these forms or was notified of their specific content. Plaintiff has offered no evidence regarding the specific communications from Experian to GE Credit Union about Plaintiff's reasons for the disputes and thus no evidence that Experian informed GE Credit Union of the bankruptcy. *See Pride Acquisitions, LLC v. Osagie*, 2014 WL 4843688 *10 (D. Conn. Sept. 29, 2014) (denying summary judgment in part because plaintiff had not submitted to the Court "any communications between the credit reporting agencies and [the defendant furnisher] to show the nature of the dispute as described by the credit reporting agencies to [the defendant furnisher]"). To be sure, the fact that GE Credit Union responded to the dispute confirming the accuracy of its reporting indicates that it received some communication from Experian regarding a dispute by the consumer about the accuracy of its reporting, but there is no evidence of what specifically Experian conveyed about the content of the dispute. And Ms. DaCruz testified that GE Credit Union did not receive the Experian form included in the summary judgment record and was merely notified that Plaintiff was asserting that the credit union's reporting was inaccurate.  ECF No. 52-4 at 11 (DaCruz testifying that although the Experian form was familiar to her, "it's in a printed formation, which appears differently than how I see it…. [I]t does not show for my view in this format . . .   I just do not work on paper form. So it does not – the format is different, but the information is the information that I do verify in the e-Oscar system against our system.");

*see also id.* at 10 (when asked the content of Plaintiff's dispute received through e-Oscar, DaCruz testified: "we would have just – we received a code of inaccurate reporting.").

It is true, as Plaintiff argues, that GE had other information in its records before May 9 indicating that Plaintiff was involved in a Chapter 13 bankruptcy and that the trustee was making payments on her behalf. Specifically, the spreadsheet maintained in the finance department – with which Ms. DaCruz, the credit union's only liaison with the CRAs, was unfamiliar – listed a lengthy series of payments made by the bankruptcy trustee. *See* ECF No. 52-3 at 16-17.  While the spreadsheet is hard to follow – and the subject of a dispute by the parties – even GE Credit Union concedes that it shows that Plaintiff owed only $1,500, rather than the $15,000 it was reporting to the CRAs. ECF No. 57 at 15-17; *see also* note 2, *supra*.  Plaintiff argues that this is enough for summary judgment as to all four of her disputes, because the difference between $15,000 and $1,500 was a material error and DaCruz's unfamiliarity with, and thus failure to check, the finance department spreadsheet during her investigation makes the credit union negligent as a matter of law. I am not prepared to go that far, as I find that a reasonable juror could still find that GE's investigation of the first two disputes was reasonable, although I acknowledge that the evidence Plaintiff points to may indeed prove persuasive to a jury.

As noted above, the reasonableness of the furnisher's investigation – like most determinations of negligence – is usually a matter to be decided by the factfinder. *See Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) ("The determination of the 'reasonableness' of the defendant's procedures, like other questions concerning the application of a legal standard to given facts (notably negligence, a failure to exercise reasonable care), is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the

13

procedures is beyond question. . . ."). Here, I cannot find that the steps Ms. DaCruz took in response to the first two disputes – even in spite of her unfamiliarity with, and thus failure to review, the spreadsheet held in another department of her employer – were so unreasonable that no reasonable juror could find in GE Credit Union's favor. Ms. DaCruz testified that she has a procedure for investigating disputes—she looks at transaction history and collection notes, reviews the information e-Oscar supplies, reviews the account, compares the credit bureau's report of the complaint to what the credit union is reporting, and confirms the balance. ECF No. 52-4 at 9-11. She also testified that she followed this procedure when she investigated Plaintiff's disputes. *Id.* at 12. In addition, as noted above, when her testimony and that of Ms. Vrabel is credited, as it must be in this context, it is clear that Ms. DaCruz took these steps in response to minimal information received from Experian about the dispute – just that Plaintiff was disputing the accuracy of the reporting in some way. *See Westra*, 409 F.3d at 827 (finding furnisher's investigation "reasonable given the scant information it received [from the CRA] regarding the nature of Westra's dispute."). Under these circumstances, although it is a close call, I cannot conclude that a reasonable jury would be compelled to find that Ms. DaCruz was required to inquire further or that the credit union was required to make her aware of all information in its possession concerning Plaintiff – including the information it had in the finance department with regard to payments received from the bankruptcy trustee. To do so would be to create a rule that a furnisher is negligent whenever it fails to consult every piece of information within its possession, custody, or control about a consumer in responding to a consumer dispute, no matter how minimal the information conveyed by the CRA about the dispute.

### C.       GE Credit Union's Failure to Mark Plaintiff's Account as Disputed

Plaintiff also argues that GE Credit Union was negligent in failing at least to mark Plaintiff's account as disputed.  Some courts have interpreted § 1681s-2(b)(1)(D) to impose an independent duty on furnishers to report an account as disputed, at least where the dispute is "bona fide." *See Boggio*, 696 F.3d at 618 (noting that "the Fourth and Ninth Circuits have recognized that a furnisher violates § 1681s–2(b)(1)(D) if it fails to identify that a consumer disputes his information, at least where the consumer's dispute is 'a bona fide dispute, a dispute that could materially alter how the reported debt is understood.' *citing Gorman*, 594 F.3d at 1163 and *Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142, 151 (4th Cir. 2008)). Whatever duties are imposed by subsection 1681s-2(b)(1)(D), however, they do not arise unless "the investigation finds that the information [being reported by the furnisher] is incomplete or inaccurate." 15 U.S.C. § 1681s-2(b)(1)(D).  In this case, as noted, I have found, as a matter of law, that GE Credit Union failed to conduct a reasonable investigation with respect to the disputes initiated on May 16 and 17, 2018, but that a reasonable juror could find that it did conduct a reasonable investigation with respect to the two earlier disputes. This finding obviates any need for me to address whether (a) there is an independent duty to report matters as disputed under subsection (D) or (b) GE Credit Union violated that duty. I have already found that GE was negligent with respect to the first two disputes – not for a mere failure to report the debt as disputed but for the erroneous reporting of the debt as anything but a zero balance. With respect to the two later disputes, my conclusion that a reasonable juror could find that GE Credit Union conducted a reasonable investigation precludes me from finding as a matter of law that it was negligent in failing to mark the account as disputed: When Ms. DaCruz conducted her investigation in response to the two earlier disputes, the sources she consulted indicated that the

full balance of $15,000 was owed and that the debt was charged off. None of those sources gave

her reason to doubt the accuracy of that report, and thus none gave her reason to believe the

dispute – such as it was reported to her – was "bona fide." *See Gorman*, 584 F.3d at 1163 ("[A]

furnisher does not report 'incomplete or inaccurate' information within the meaning of § 1681s-

2(b) simply by failing to report a meritless dispute …."). As long as her investigation was

reasonable – which, as noted, is a jury question – the credit union had no obligation to report the

debt as disputed.

**V.      CONCLUSION**

For the reasons set forth above, I hereby GRANT in part Plaintiff's motion for partial

summary judgment.


IT IS SO ORDERED.


            /s/           
Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
               September 25, 2020